The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's case will be called as previously announced and the times will be as allotted to counsel. The case today is United States v. Carl Langston, Appeal Number 23-1337. Attorney Herrick, please introduce yourself for the record and proceed with your argument. Good afternoon. May it please the Court. I'm Robert Herrick. I'm here for Carl Langston today. As the Court knows, we are challenging Mr. Langston's conviction for being a felon in possession of a firearm. And we're challenging it on Second Amendment grounds. And this is an as-applied challenge. We're arguing essentially that Mr. Langston cannot be convicted of possession of a firearm as a felon when the predicate offenses were themselves nonviolent. The basis for our argument, in short, is that there is no adequate historical analog for regulation that permits disarming individuals who are convicted for nonviolent offenses at the relevant time period. And as is clear, I'm applying the Bruin test, the historical test that was set forth in Bruin. And as the Supreme Court made clear in Bruin, the government bears the burden here. And it bears the burden of establishing that the restriction that is being imposed is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms. And for those purposes, the relevant time period is really the 18th century and most of the 19th century. That's my understanding. Counsel, I think you acknowledge in your briefs that the plain error standard applies to your Second Amendment argument, correct? That is correct. Can you address why you think that Bruin, the decision in Bruin is such that you can win under the plain error standard? Because, of course, Bruin didn't consider a felon in possession law. So can you explain more about why you think that you should nevertheless win under plain error? Oh, certainly. So Bruin essentially created a hoop that the government has to jump through to impose certain restrictions upon gun ownership. The hoop is relatively narrow. It requires that there be an adequate analog from the relevant time period that this court can look back to and could say, well, this would pretty plainly have been comparable to something that existed at the time. It does not, as Rahimi made clear on Friday, does not have to be a twin. But it does have to be comparable. So what I think would be a useful question is what would an adequate analog actually look like in this circumstance? And what I'm suggesting is that an adequate historical analog would be a statute from the relevant time period that permanently disarmed individuals convicted of nonviolent offenses. And you can tell me if I'm wrong. Your argument is that under the test that Bruin established, it would be clear and obvious that a felon in possession law would be unconstitutional. Is that right? Well, I'd be a little bit more narrow. It would be that a felon in possession law, when it comes to predicate offenses that are themselves nonviolent. I don't think I have to address the issue of those who have committed violent offenses. Counsel, there's a line in the government brief which is a bit mystifying. But it says your client has, in fact, been convicted of a domestic violence offense. And I don't know whether that was charged in the indictment or the complaint or whatever it was here. But is it true that your client was convicted of a domestic violence crime? Yes, that's true. And how long ago was that? I want to say 2019. But I would have to double check with the PSI. Okay. Was that charged in the indictment? It was not charged in the indictment. And that, I think, is part of the reason why I have a viable plain error argument. It's that the conviction here is really circumscribed by the indictment. But, counsel, had your predecessor, trial counsel, raised this in the district court, the United States might well have amended that indictment, superseded it with reference to all of his convictions. Agreed? I think that there would have been procedural hurdles that the government would have had to go through to try to supplement that. But, yes, I think that there was a procedural way of going about doing it. I don't think it was a cost-free way of doing it. I'm not sure whether they would have been required to represent the case or to seek the superseding indictment. But, yes, I agree with that. Okay. Thank you. Counsel, can I just take you back to the question that I was asking you? Because, again, I'm just trying to understand. So, we have a test set out in Bruin, which you've explained, you know, an adequate analog. And in deciding whether it would have been clear and obvious to the district court that even if your client, let's assume, again, has no violent predicate, that he could not be convicted consistent with the Second Amendment. So, when I look at Bruin itself, it seems to me that there were five justices in Bruin that, even though, you know, this is not part of the holding of the case, they wanted to make clear that nothing about the rules set out in Bruin should be understood to apply to felon and possession laws, for example. And they were reiterating statements that had been made in earlier Supreme Court decisions as well. So, to put it a little differently, if we're trying to figure out if the rule that Bruin set out was so clear and obvious in requiring that your client's conviction could not possibly be consistent with the Second Amendment, how can we apply that standard on plain error view when we have five, you know, a majority of the justices in Bruin saying that their rule that they just announced should be considered? That it should not be understood as applying to felon and possession laws? Well, partly because I think the Supreme Court, when it drafts its opinions, does try to be as narrow as possible and tries to address the issue that's before them. What I would suggest is that this is dicta. There is basically a 20-year project that's underway to recenter the Second Amendment in terms of our constitutional universe. And what I would suggest is that there are limiting statements that have been made by the Supreme Court that even this court has not accepted at face value. So, what I would point out would be Torres-Rosario, that's a case from 2011. And in 2011, even though in Heller there was a similar comment that was made, this court essentially said, we recognize that there's a possibility that the Supreme Court would find that there are certain felonies that are so technical that it would be unwilling to impose a lifetime disarmament upon those who have been convicted of it. So, the fact that there are statements that have been made in Heller, in Bruin even, that purport to limit the scope, I don't think actually should be seen as limiting. Doesn't Raheny control now, rather than Bruin? Well, I think Raheny goes a long way towards explaining Bruin. No, no, no, no, no, no. It is a Supreme Court opinion issued while the case was on appeal. Aren't we obligated to apply it? Oh, 100%, Your Honor. I think this court is obligated to follow Raheny, and I would suggest that it actually is a case that is helpful to Mr. Langston in this case. Okay, explain how it is helpful under a plain error standard of review. Well, I think it's helpful, first of all, because the court is basically applying Bruin and saying, yes, there is a historical precedent for disarming individuals, and that historical precedent goes back to the relevant time period. So, the Bruin test can be met, so that is certainly the case, but at the same time, the Bruin test has certain prerequisites, and the prerequisites, I would suggest, is that, first of all, that there be due process. Second, that there be an individualized judicial finding that the person subject to the restriction poses a credible threat to the physical safety of others. There's also an indication that the temporary nature of it is significant. But just focusing on the physical danger, the credible threat of physical danger, and the individualized judicial determination, what I would suggest is that there's a vast universe of felonies out there that really have no element of violence, no element of physical danger or threatening of physical danger. What I would suggest is that it is very clear that, for lack of a better alternative, the conviction of former President Trump, that's a conviction that simply would not qualify and satisfy the Bruin test. There's just no way that it would meet the test that's set out by the Supreme Court in Rahimi. And I would also point out that Rahimi does a very deep dive into the history here. It's stretching back into relatively arcane aspects of American legal history. And the fact that this is what it winds up coming up with as analogs is significant for our case as well. So what I'm suggesting is that nonviolent offenses, absent a judicial finding of a credible physical danger to another, would not justify the permanent disarmament of a defendant who's been convicted of a nonviolent crime. Thank you. Now, I don't believe I have an enormous amount of time. I'd be happy to address any other questions that my brief has raised, or any other issues that the court would like to hear me from. Counsel, I have a question for you about the suppression motion issues. It seems that one of the key disputes between you and the government here is that the government is saying we need to focus on looking at all the issues from a totality of the circumstances lens. And the way that your brief laid out the issues, it's really asking us to look at them one by one in isolation. Do you agree that it's the totality of the circumstances test that applies? I agree as a matter of black letter law that it's the totality of the circumstances. I think where we disagree, the government and I, is that I would suggest that there are two separate transactions that are occurring on the evening in question. So certainly the police come out, they're investigating an altercation that's outside of this bar, they come, they do an investigation, they speak with bar security, they clear the scene. They don't do any further investigation, they're not interested in finding out who the individuals were involved. That part of the equation is over. When they return the second time around, they're coming in response to a noise complaint and a third hand gun complaint. Why do we need to look at it as two separate, in other words, is there a legal principle that you're relying on? The police are investigating a disturbance at the bar. Why this distinction that you've created between, you know, the first time they traveled there and then the second one, what requires the district court to look at it in that way? It's two distinct, completely separate investigations and none of the information that the police couldn't remember what was, they had just learned an hour earlier. Oh, it was even shorter, a shorter period than that. How could they forget what they had learned 15 minutes earlier? So I'm not asking that they forget, but what I'm suggesting is that the information that called them back to the scene was not any deep interest in trying to ascertain who was involved in this incident earlier or whether or not it actually had any effect on the events later on. Isn't the information that was relayed through the bar manager, it literally, from what I recall, it said the same individual who'd been in the fight before is now back and he's gone to his car and obtained a gun. So it was specifically referencing back to the earlier call. So why would the district court needed to have looked at these things separately? Well, recognizing that my time is done, I would just point out that this is a third-hand information that is being relayed. And that's the only information that causes a district court judge to conclude that there's an imminent threat to public safety. Without the third-hand call, there's nothing. This is a noise complaint in a busy bar area of Portland. So what I would suggest is that, yes, the fact that there had been an earlier incident outside of a bar does not have any particular bearing when it comes to the third-hand information. I have a quick question about the denial of the acceptance of responsibility reduction. Yes. Even though your client admitted responsibility for the crimes that were charged, the court denied the reduction based on his drinking of alcohol and his troubles out while he was on bail. And I do see the point you've made in your briefs that the court doesn't have to deny the reduction. And I see, too, that sometimes denying a reduction in a case like this, it might penalize people who are dealing positively but maybe not perfectly with substance use disorders. But in this particular case here, could you focus in on why it was error for the court to deny the reduction here, given the rationale the court gave and given the level of review that we have? Well, really, the argument that I would make is that this is not clear error to say that there's a violation of the conditions of release. There were violations, and we're not disputing that. What I'm suggesting is that the nature of the violations were too attenuated from the actual underlying offense to deny acceptance of responsibility because it's such a draconian or it has draconian effect on the guideline sentencing range. So what I would suggest is that that's the basis for my argument that it was an abuse of discretion. Okay. Any more questions? Thank you. Thank you. Thank you very much. Thank you, Attorney Herrick. At this time, please mute your audio and video. And Attorney Block, please unmute your audio and video. And go ahead and introduce yourself on the record to begin. Good afternoon. May it please the court, Benjamin Block on behalf of the United States. I would like to begin with the brewing claim that made up the majority of your discussion with opposing counsel and emphasize the fact that this is a plain error standard, as you all recognize. And here, this is truly an inappropriate vehicle by which to find plain error. There is no contrary authority within this circuit that suggests that 922G1 is unconstitutional. There is no uniformity in the out-of-circuit authority. We have a clear circuit split between the Third and the Ninth Circuit on the one hand and the Eighth Circuit on the other. This court recognized in the Thompson decision that there's a lack of clarity in this area of the law. And this court's rule from Croco is that you cannot have plain error where other circuits are split on a question of disputed law. Moreover, this court has repeatedly held that the considered dicta of the United States Supreme Court is effectively binding upon it. And in this instance, you have eight Supreme Court justices who just on Friday in Rahimi joined an opinion in which they referred to felon in possession statutes as presumptively lawful. This court has always taken a conservative approach and allowed the Supreme Court to overrule its own precedent. That principle is found in the Ivory decision and in Jimenez-Benegas, and there's really no reason to go against that here. This is clearly a hot-button topic, and it's very difficult to tell from Rahimi which way the court is going to go. It's important to emphasize that they did find a historical analog for 922G8 for the protective order provision. Your counsel's argument is that this involves, because of the government's choice as to how to indict, only prior convictions for drug dealing. Drug dealing, he argues, is not inherently violent, and he then draws the general proposition that if you look back at history, mere drug dealing or, I suppose, bootlegging or something analogous would not have resulted in a permanent, thereafter, ban on owning firearms. Now, part of the answer might be, well, had the point been made below, arguments would have been made about that and whether there were any historical analogs. But just taking the proposition as it is, his argument is that's pretty clear now, and that's all he needs to show to show clear error. Well, I would say a few things. I think that argument is misguided in a few respects, one of which clearly, as Your Honor notes, if this court were to determine that a violent felony was required and vacated and remanded, we would simply supersede the indictment to allege both a robbery conviction and a domestic violence conviction. Why didn't you do it in the first place? Because it's not legally required. It was not then, and it is not now. The government is well aware of the Second Amendment controversy and chooses not to list two violent crimes in the indictment? Again, I don't know what the basis for that decision was. It may have been, again, the robbery conviction and the domestic violence convictions were both from 2008, I believe. It may have been far simpler for us to obtain the conviction records for the more recent drug trafficking, which is not to say that we couldn't obtain the records for 2008, but it may have simply been more expedient to charge the more recent offense. But again, it was not required, and I don't think that under Rahimi it is required today. Rahimi dealt with 922 G-8 and made what I view as a very limited holding with respect to what's required with that statutory provision. There's honestly very little in the Rahimi decision, I think, that provides additional guidance to this court on the felon in possession question. Somewhat frustratingly so, I would say. But in the absence of clear guidance and eight Supreme Court justices saying felon in possession statutes are presumptively lawful, I don't think that we have any indication that felon in possession statutes are doomed. So do you read that, whether you call it dicta or considered opinion, as shifting the burden of proof onto the defendant? Well, I don't view the Supreme Court decision as doing that, but I do think that the plain error standard places the burden upon the defendant in this case to establish all four elements of plain error. And I think that he is unable to meet his burden based on the court's decision in Rahimi. I don't think Rahimi gets him over the line. I don't think it answers the question directly. I'm sorry, I'm not following the logic. If there is a presumption that all felon in possession statutes survive the Second Amendment, why doesn't that shift the burden? I see you, Your Honor. Yes, I think it certainly makes his argument that Bruin undermines felon in possession statutes more difficult. We now have eight justices saying that these are lawful, and he has to show that the court committed clear or obvious error. And I don't see how he can do that in light of the language in Rahimi. Counsel, a number of circuits, even if it's unpublished decisions, have declined to apply plain error to similar arguments made by defendants, correct? And I'm just wondering, I just want to make sure, has any court found that a failure to, well, has any court found in favor of the defendant's argument here under a plain error standard that you're aware of? No, and I believe I cite a number of decisions in our brief from other circuits applying plain error and deciding against the defendant. I believe the Ninth Circuit is the only court that I'm aware of that has taken a similar procedural posture and declined to apply plain error. That seems to me to be an outlier, and I don't see any particular basis to do so. This court addresses constitutional claims on plain error review all the time, and the Second Amendment is no different. Another question that I have for you, spurred a little bit by Justice Jackson's concurrence in Rahimi, is I'm just curious for the government's view. Given the extremely detailed historical analysis that needs to be done under the Bruin standard or the Bruin-Rahimi standard, what is the government's view about whether plain error really could ever be invoked to an analysis that, you know, Justice Jackson talked about how difficult this is to do for the district court, even when it's fully briefed by the parties? You know, is there a circumstance in the government's view that it could ever be clear and obvious that the Second Amendment wouldn't permit a conviction under a statute that the Supreme Court hasn't addressed yet? Obviously, it's clear and obvious in other situations, but given the historical experts that have to be introduced to figure all of this out in the cases, I'm just curious how you think that interacts with the clear and obvious standard. There's about five minutes left. Five minutes. I think this is an impossible task for district courts under any circumstances, but particularly for courts of appeals to look back and try to determine on plain error that the district court should have known that this was unconstitutional, where the historical inquiry is so detailed, so arcane. And the court was given no opportunity to do it. I think the only way in which it could be plain error is if you had a uniformity of opinion from other circuits, perhaps, where occasionally this court will say, well, there's not binding Supreme Court precedent and there's not contrary interest circuit precedent, but we do have a sufficient uniformity of out-of-circuit precedent that we see plain error. But that is certainly not the case here. Let me inquire further. Suppose not on plain error a number of circuits were to find that where the underlying convictions are only for nonviolent felonies. Not on plain error, but where the issue is preserved. Suppose a number of circuit courts say then that violates the Second Amendment. Is that enough for the First Circuit to find clear error? Well, assuming that this issue had been preserved in the district court. No, no, no, no, no, no. You are misunderstanding my question. You started by saying, well, if on clear error review, a number of circuits had found a Second Amendment violation, that might be a basis to find a violation here. I'm changing the calculus so that if a number of circuits who had before them the preserved issue reached the conclusion your opponent wants us to reach, would under First Circuit law that have been sufficient to find clear error, the first prong of the plain error review. Well, first let me apologize. I didn't mean to say clear error. I meant under the plain error standard. Narrowing it to the inquiry of is there clear or obvious error, the second prong of the plain error test. Yes, I believe that this court precedent has held that if there is a uniformity of out-of-circuit precedent, it can find plain error under certain circumstances, but it's not required. I actually thought your argument was going to be, no, we can read the Supreme Court opinions ourselves, and if there is a presumption in favor of felon and possession statutes, it doesn't much matter what other circuits have held on a plain error standard of review. Yes, certainly this court, out-of-circuit precedent in all circumstances would merely be persuasive, and so I certainly am not suggesting that it would be binding. And if the court reads the Supreme Court precedent differently than the other circuits, its obligation is to rule as it sees, that it's not bound by the out-of-circuit decisions in any way. And it doesn't need to find, it's not required to find plain error merely because other circuits have established a rule of law with which it disagrees. Okay. I think you have about a minute left of time. Thank you, Your Honor. I'll just very briefly note with respect to the reasonable suspicion determination that, as Judge Rickleman, you pointed out, the defendant here is really trying to atomize the inquiry into what facts were known to the officers, and that's inconsistent with the holistic analysis that's required by law. And here, the fact that they had previously been called to the scene for a violent altercation between two men, were unable to locate them, and then were called back a short time later where they knew that the bouncer had said that if the men met up again, there could be additional violence, and now one defendant has a gun. There's ample, ample evidence that supports their determination to approach Mr. Langston, attempt to speak with him, and his immediate resistance and noncompliance created a snowball of events, all of which supported the officer's decisions to physically restrain him, which ultimately led to the discovery of the gun. And so, we believe that there is reasonable suspicion. We believe that there was probable cause to arrest by the time the firearm was discovered. And so, there's simply no basis to suppress the evidence here. Unless the court has further questions, we would ask the court to affirm. Thank you. Thank you. Thank you, counsel. That concludes arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting.